SYLVIA DOUGAN, Administratrix, &c., Respondent, *v.* THE CHAMPLAIN TRANSPORTATION COMPANY, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, JUNE, 1872.)

The State courts of common law have jurisdiction in causes of action arising within admiralty jurisdiction, where a remedy exists at common law, although the cause of action is not recognized by the common law, but is given entirely by the State statutes.

So held in view of the acts of congress of 1789 and 1845 (1 U. S. Stats. at Large, p. 76, § 9; 5 id. pp. 726, 727).

Plaintiff's intestate, a passenger upon defendant's boat, went upon the outer lower deck, outside the weather door, upon a cold night, where the water thrown upon the deck by the wind was freezing, and his hat having blown off, in an effort to save it slipped and fell. The gangway of the boat was entirely open excepting a bar at the top, and through this he slipped overboard and was drowned. There was a water closet on the outer part of the lower deck designed for the use of the crew, and he had remarked that he was going out there to use this. There was also another water closet inside the weather door for passengers' use, with a sign indicating its purpose, but it did not appear that deceased knew of this, and there was no prohibition upon the use of the outer one by passengers. The boat at the gangway was from thirty to forty feet wide, sloping slightly from the center to the bulwarks, and the gangway was from eight to nine feet wide.

*Held,* that the omission of a more perfect guard at the gangway was not such negligence on the part of the company as made them liable for the accident.

*Held,* also, that the defendant's negligence under the circumstances must be held to have contributed to the accident.

APPEAL from judgment rendered on the verdict of a jury, and from order denying a new trial. The facts are stated in the opinion.

*M. Hale,* for the respondent.

*Francis A. Smith* with *A. C. Hand,* for the appellant.

Present—POTTER, DANIELS and PARKER, JJ.

PARKER, J. This action was brought to recover damages sustained by the widow and next of kin of John Dougan,

deceased, in consequence of the death of the said John Dougan, caused, as alleged, by the negligence of the defendant. Dougan was, on the 15th day of November, 1869, a passenger on the steamboat "United States," owned and run by the defendant on Lake Champlain.

He took the boat at Port Henry for Burlington, Vt., paying his fare to that place. The "United States" was at the time of the accident, and had been for several years, one of a line of passenger boats known as "The Champlain Transportation Company's Line," plying between Plattsburgh and Whitehall, on the navigable waters of Lake Champlain, touching at intermediate landings in the States of New York and Vermont, and among them at Port Henry and Essex in New York, and at Burlington in Vermont, and making in all, in both States, eight landings between Burlington and Whitehall.

She is constructed with an open weather deck forward, sloping slightly from the center to the bulwarks, and from thirty to forty feet wide from gangway to gangway. This deck has bulwarks of boards or plank on each side three or four feet high to the stern, and a gangway on each side eight or nine feet wide through which passengers and freight pass on and off, and which are closed only by two cross bars to each, hinging on the bulwarks at the ends, and of the same height as the bulwarks, and folding together upon an upright stanchion on center piece attached firmly to the deck.

This open deck is used by the crew in rough weather as a runway for what is called the "trim box," which is filled with chains and arranged on trucks, so that it may be rolled from side to side as occasion requires in order to keep the boat trim. This deck is also used for horses and freight of different kinds, but has no seats or other accommodations for passengers, although passengers are not forbidden to go there, the accommodations for passengers being in the recess aft the shaft, and in the saloon upon the upper deck.

Just back of the forward deck are "weather doors" on each side, which are kept open or shut according to the weather,

and through which passengers enter the inclosed portion of the boat. Inside of the weather doors, on the left-hand side of the boat, is a water closet for passengers, having a sign on the door indicating its purpose ; and on each side of the boat, outside the weather doors, opening from the deck above described, is another water closet, which has no sign to indicate it, and is designed for the use of the crew.

The boat was duly enrolled, licensed and inspected, and was staunch and seaworthy. After the boat left Essex, on the way to Burlington, the deceased, who had been standing inside the " weather doors," went out on the forward deck, saying he must go to the water closet. As he went through the doors, which he opened, his hat blew off; he sprang for it, slipped upon the icy deck, fell upon his back and slid overboard, through the gangway, under the cross bars and was drowned. The time of day was between dusk and dark ; the wind was blowing to such a degree as to blow the water upon the deck, where it froze, making the deck slippery.

Evidence was given on both sides to show in which State, New York or Vermont, the accident occurred, and the plaintiff during the trial was suffered to amend his complaint, and add a count based upon the Vermont statute, authorizing a recovery by an administrator for damages on account of his intestate's death caused by wrong or negligence, to all of which defendants objected and duly excepted.

At the close of the evidence, the defendant moved for a nonsuit on the ground :

1st. That this court has no jurisdiction of the action, because the transaction occurring on inter-State navigable waters, within admiralty jurisdiction, the jurisdiction of those courts is exclusive ; and because the accident having occurred out of the State, no right of action accrues under the statute of this State.

2d. That there is no evidence of negligence on the part of the defendant.

3d. That the proof establishes that there was contributory negligence on the part of the deceased.

The court denied the motion and the defendant excepted. The cause was submitted to the jury under a charge to which no exception was taken.

The jury found, specially, that the boat was in the waters of the State of New York when Dougan was lost overboard, and rendered a verdict in favor of the plaintiff for $3,000.

A motion was made by the defendant for a new trial upon the minutes, which was denied. The defendant appeals from the judgment entered upon the verdict, and from the order denying a new trial.

In regard to the question of the jurisdiction of this court in the case, I think the decision was right upon both branches of that question ; that is, that it is not a case within the exclusive jurisdiction of the courts of admiralty, nor one not cognizable by the courts of this State by reason of the cause of action arising out of the State.

As to the latter point, the verdict of the jury, that the boat was in the waters of this State when Dougan was lost overboard, is decisive.

Upon the question of its being a marine tort, therefore a case for admiralty jurisdiction merely, it is only necessary to examine the acts of congress on the subject, to see that the case is within the concurrent jurisdiction of the common-law courts as well.

By the ninth section of the " Act to establish the judicial courts of the United States," approved September 24th, 1789, it is provided that " the district courts shall    *    *    *    have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction,    *    *    *    saving to suitors in all cases the right of common-law *remedy*, where the common law is competent to give it."

By the " Act extending the jurisdiction of the district courts to certain cases upon the lakes and navigable rivers connecting the same," approved February 26, 1845, there is the same saving to suitors of " the right of a concurrent *remedy* at the common law, where it is competent to give it, and any concurrent remedy which may be given by the State laws

where such steamer or other vessel is employed in such business of commerce and navigation."

Granting the contract, by which deceased was to be transported from Port Henry to Burlington, to be a marine contract, and the negligence (if any) by which he was lost overboard a marine tort, cognizable by the admiralty courts, still, although the cause of action is not one recognized by the common law, but a mere statutory one, the common law furnishes a competent remedy, and such remedy, within the meaning of the act, is pursued in this action; for, I take it, " the intent of the act is to save the remedy or right of action in those courts which proceed according to the common law as distinguished from the course of admiralty," as is held in *Chase, Administrator,* v. *The American Steamboat Co. ;* MS. opinion of POTTER, J., in the Supreme Court of Rhode Island. Hence, under the act of 1789, the admiralty jurisdiction in this case is not exclusive of the common-law courts or looking particularly at the statute under which this action was brought (Laws of 1847, chap. 450, and Laws of 1849, chap. 256); the same may be stated in the language of RAPALLO, J., in *Brookman* v. *Hamill* (48 N. Y. R., 554, 558, 559) as follows: " There is another class of cases in which the State laws are operative, but for a different reason, viz. : Claims against vessels navigating the lakes and rivers connecting therewith. The jurisdiction of the States over these cases is protected by the act of congress of February 26, 1845, which expressly secures to suitors not only their concurrent remedies at common law, but also any concurrent remedy *which may be given them by the State laws where the vessel is employed.*"

In the present case, the State laws not only give the right of action, but provide for the bringing of an action in the State courts, of course, so that actions of this nature are clearly within that provision of the act of 1845 which secures to parties the right to bring them in the courts of the State where the vessel is employed.

The case of *Chase, Admr.,* v. *American Steamboat Co.*

(*supra*) was an action brought in the Supreme Court of Rhode Island to recover damages for the death of the plaintiff's intestate, caused by a collision in Narraganset bay, the action being brought under a statute of that State, similar to the one under which the action in the case at bar is brought, and it was held that the State court had jurisdiction.

The next ground on which a nonsuit was claimed was, that there was no evidence of negligence on the part of the defendant.

The only complaint against the defendant is, that it left the gangway, where the deceased fell overboard, protected only by a bar across it, from three to four feet above the deck. No doubt, if it had been protected also by a bar of sufficient width at the bottom, the accident would have been prevented.

Was the omission of such additional guard in the construction of the boat such negligence on the part of the defendant as to make it liable in the present case?

It is plain that the forward deck was not a part of the vessel intended for passengers, and that this was evident to the deceased. Here were no seats or other accommodations for passengers, but ample and safe accommodations were provided in the after part of the boat and in the saloon upon the upper deck. True, passengers were not forbidden to go upon this deck, and were suffered to be there; but it was not a place to which they were invited, or where they were expected by the defendants to remain.

So far as passengers are concerned, it was but the entrance to the boat. It was constructed with reference to its appropriate uses, and not at all in the contemplation of its being used as a place for passengers to loiter or remain. All this clearly appears from the evidence. Under such circumstances, I do not think the defendant can be charged with neglect of duty to its passengers for failing so to hedge up the way that they, being unnecessarily upon this deck, could not slide under the bar through this gangway. And the passengers who left the inclosed and protected portions of the boat, intended for

them, and ventured upon this part, less protected, and not intended for them, must be deemed to do so at their peril.

If passengers, not being forbidden to do so, should occasionally mount the wheel-houses and bulwarks, and one should happen to fall overboard, it would scarcely be claimed that the defendant was in fault for not having so protected those parts of the boat as to render them secure against such accidents.

The extreme degree of care required of defendant, as a carrier of passengers, for their security against falling overboard, did not require provision against such accidents in parts of the boat not intended for passengers, and where they are not expected to be, and I think defendant is not chargeable with negligence in this case for failing to provide another bar across the gangway in question.

As well might a railroad company be deemed negligent for omitting to fence in its platform, so as to prevent passengers who should prefer to ride there from falling off. The same answer applies in each case. The place is not intended for passengers to ride in, and the carrier of passengers is, therefore, not required so to fence it in. (See *Spooner* v. *Brooklyn City Railroad Co.*, 31 Barb., 419.) Upon the question of the negligence of the deceased, it follows, from the view above taken, that he must be held negligent in exposing himself to the danger which the occurrence shows that he encountered in entering upon the forward deck at the time and in the manner in which he did. He voluntarily and unnecessarily incurred the peril.

The error, if it was so, in admitting proof of the Vermont statute and amending the complaint, did no harm, as the jury found the *locus in quo* of the accident in this State.

The suggestion that, by the ruling complained of, defendant was led not to give further evidence as to the place of the occurrence of the accident, is answered by the fact that the ruling was after evidence on both sides, on the question of the place, had been given, and defendant had rested. All the evidence it deemed necessary on that question was, therefore, given by it.

I discover no other error than those above pointed out. The defendant was entitled to a nonsuit upon both the second and third grounds, upon which it was moved for. The judgment and order appealed from must be reversed and a new trial granted, with costs to abide the event.